679 S.E.2d 670

**STATE of West Virginia, Appellee,**

v.

**Sheila G. ADKINS, Appellant.**

No. 34275.

Supreme Court of Appeals of
West Virginia.

Submitted April 7, 2009.

Decided June 22, 2009.

Jason D. Parmer, Esq., Hinton, WV, for
Appellant.

Darrell V. McGraw, Esq., Attorney General, Barbara H. Allen, Esq., Managing Deputy
Attorney General, Charleston, WV, for Appellee.

PER CURIAM.

In this criminal appeal we are asked to review whether the circuit court erred by not awarding the appellant a new trial when the key witness' criminal history had not been fully disclosed prior to trial. Because we find that the circuit court abused its discretion by failing to grant a new trial, we reverse the appellant's conviction and remand for a new trial.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The appellant, Sheila G. Adkins (hereinafter referred to as the appellant), was indicted by the grand jury of Summers County in the March 2007, term of court on one count of delivery of a controlled substance (hydrocodone), in violation of W. Va. § 60A-4-401(a)(ii) (2005) and one count of delivery of a controlled substance (alprazolan), in violation of W. Va. § 60A-4-401(a)(iii) (2005).

These charges arose after a confidential informant made two purchases of controlled substances from the appellant. The purchases were supervised and directed by law enforcement, who provided the purchase money to acquire the drugs. The transactions were not recorded, and the only witnesses present during the transactions were the appellant and the confidential informant.

The appellant pleaded not guilty at her arraignment on March 16, 2007. That same day the State initiated discovery by filing with the clerk a document designated "State's Request for Discovery from Defendant." This document requested that the defendant provide to the State all discovery required to be provided to the State by the Defendant by the provisions of Rule 32.03(b) of the West Virginia Trial Court Rules [1] and Rule 16(b) of the West Virginia Rules of Criminal Procedure.[2] In a separate filing,

1. West Virginia Trial Court Rule 32.03(b) states:

(b) Discovery from Defendant. Upon request by the State and within ten (10) days after the State has provided the discovery requested by the defense, unless otherwise directed by the court, the defendant's attorney shall:

(1) permit the attorney for the State to inspect and copy documents and tangible objects as provided for in W.Va. R.Crim. P. 16(b)(1)(A);

(2) permit the attorney for the State to inspect and copy or photograph any results or reports of examinations and tests as provided for in W.Va. R.Crim. P. 16(b)(1)(B);

(3) inform the attorney for the State, in writing, if requested, notice of any alibi defense and other information pertaining thereto as provided for in W.Va. R.Crim. P. 12.1;

(4) provide the attorney for the State, in writing, with notice of any insanity defense and other information pertaining thereto as provided for in W.Va. R.Crim. P. 12.1;

(5) provide the attorney for the State a list of the names and addresses of the witnesses whom the defense intends to call as provided for in W.Va. R.Crim. P. 16(b)(1)(D); and

(6) disclose to the attorney for the State all information relating to expert witnesses for the defendant as provided for in W.Va. R.Crim. P. 16(b)(1)(C).

2. Rule 16(b) of the West Virginia Rules of Criminal Procedure states:

... (b) Disclosure of evidence by the defendant.—(1) Information subject to disclosure.

(A) Documents and tangible objects.—If the defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the state, the defendant, on request of the state, shall permit the state to inspect and copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof, which are within the possession, custody or control of the defendant and which the defendant intends to introduce as evidence in chief at the trial.

(B) Reports of examinations and tests.—If the defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the state, the defendant, on request of the state, shall permit the state to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that witness' testimony.

(C) Expert witnesses.—If the defendant requests disclosure under subdivision (a)(1)(E) of this rule and the state complies, the defendant, at the state's request, must disclose to the state a written summary of testimony the defendant intends to use under Rules 702, 703, and 705 of the Rules of Evidence as evidence at trial. The summary must describe the opinions of the witnesses, the bases and reasons therefor, and the witnesses' qualifications.

(D) Defense witnesses.—If the defendant requests disclosure under subdivision(a)(1)(F) of this rule, upon compliance with such request by the state, the defendant, on the request of the

the State also provided a list of witnesses, as well as the investigative officer's report, a copy of money used in the controlled drug transaction, a report of the chemical analysis of the substances alleged to have been sold by the appellant, the appellant's criminal history and a one-page document entitled "Information on Confidential Informant."

On May 11, 2007, the appellant initiated discovery requests of the State. These requests included a specific request for exculpatory material as well as the criminal history of any witness.[3] The State's responses included a copy of the appellant's and all witnesses' criminal histories. The State's listed witnesses were the Sheriff and Chief Deputy Sheriff of Summers County, a member of the West Virginia State Police who performed a chemical analysis of the substances alleged to have been sold by the appellant and the confidential informant.

Prior to trial the State provided to the appellant a copy of the confidential informant's 2004 pre-sentencing report on unrelated charges. This report showed that between the years 2001 and 2004, the confidential informant had 24 convictions for worthless checks and a conviction for welfare fraud. The State also provided to the appellant prior to trial a copy of a report from the State Police's Criminal Investigation Bureau's (CIB) criminal record check on the confidential informant. This report showed no prior criminal history involving this witness.

At a pre-trial hearing on August 10, 2007, counsel for appellant advised the court of possible problems with the state's disclosure of the confidential informant's criminal history. Counsel stated as follows:

> MR. PARMER: ... There is just one minor issue. When I was reviewing the file this morning, the informant was [name of confidential informant][4]. And there is—I asked for evidence of any kind of impeachment material or anything of that nature. And I remember seeing [the confidential informant] up here several times. I guess she was charged with some crime. But the information that I received in response to my request for the impeachment material was that she has no criminal record. And I'm not sure—I mean, there were at least charges.

> THE COURT: She plead guilty to welfare fraud and a [sic] served 30-day sentence, I think.

> MR: PARMER: If I could get a more complete response from the State on that, I'm sure that would be useful. All is need is just—in writing, so that I can introduce it when she testifies. Other than that, I think we're—unless something happens between now and then, which I don't think it will.

state, shall furnish the state with a list of the names and addresses of the witnesses the defendant intends to call in the presentation of the case in chief. When a request for discovery of the names and addresses of witnesses has been made by the state, the defendant may be allowed to perpetuate the testimony of such witnesses in accordance with the provisions of Rule 15.

3. The appellant specifically requested the following information in a document entitled "Defendant's Motion to Compel Production of Exculpatory Evidence":
   1. Any and all evidence intended to be introduced during the State's case-in-chief;
   2. The identity, physical address, mailing address and phone number of all witnesses intended to be called by the State during its case-in-chief or during rebuttal;
   3. Grand jury minutes and the transcript of the testimony heard by the grand jury;
   4. A statement of whether there has been or will be compensation in any form to witnesses or witnesses' family, promised of favorable treatment of witnesses or witnesses' family in exchange for their cooperation with the State in this case, and the details of said compensation or favorable treatment;
   5. A statement of any 404(b) evidence or impeachment material including but not limited to any other bad acts, dishonesty, violence, moral turpitude (charged or uncharged) done by any witness known by the State;
   6. Any inconsistent statement and statements implicating others by any witness known by the State;
   7. Any exculpatory evidence of a frame-up, alibi evidence, that the defendant was acting in self-defense, that the defendant may be guilty of a lesser included offense, or that the defendant may have an insanity defense.

4. In order to protect the integrity of further proceedings, we see no need to identify the confidential informant by name.

The Court ordered the State to provide an updated criminal history to the appellant.

The appellant's trial was scheduled for August 29, 2007. The State's witnesses included the Sheriff of Summers County, his deputy, the chemist who analyzed the purchased substances and the confidential informant, all of whom were previously disclosed.

The Sheriff's testimony at trial included questions about the confidential informant's credibility. The Sheriff testified that he had dealt with the confidential informant on numerous occasions, but that nothing was "major serious" to his knowledge. He elaborated as follows:

> The worst offense she had was probably some bad checks, which is a part of the drug problem, the drug addiction. You can almost read it to the letter. It normally starts out with something, probably bad checks, just several so on. I had probably, would assume, arrested [the confidential informant.] And actually, we don't arrest on worthless checks, simply for the fact that the jail bill's $48.50 a day. We normally try to pick them up between the hours of nine and four, bring them to the magistrate and have them arraigned. And that was that.

The appellant's cross-examination of the confidential informant was centered on her previous criminal history and whether she had further criminal issues since 2004. The witness minimized her subsequent criminal activities, as shown in the following exchange:

> Q. Okay. Now the checks. Would you agree, that tends to reflect poorly on your honesty?
>
> A. Yeah.
>
> Q. And this only goes up to '05. Do you have other charges through '05?
>
> A. I had some bad checks in Raleigh County, yes.
>
> Q. Okay. How about into '06? What did you have then?
>
> A. I don't know. All I've ever had is bad checks, besides the welfare fraud. Aside from that, I don't know where you're going on that, what you're asking.

That same day, the jury returned its verdict, finding the appellant guilty of all counts of the indictment.

On September 7, 2007, the appellant again moved for an updated criminal history for the confidential informant. The court directed the probation officer to provide the updated criminal history to counsel. This information was provided and showed that the confidential informant's prior criminal history was more substantial than previously disclosed to the appellant. In addition to the known 24 convictions for worthless checks and the welfare fraud conviction, there were other substantial charges and convictions, including a revocation of probation on charges of obtaining welfare by false statement.[5]

On October 5, 2007, the appellant moved for a new trial, arguing that the failure of the State to provide the confidential informant's updated criminal history was prejudicial. The appellant argued that if this criminal history had been available, "it would have been easier to poke holes through her testimony." The appellant argued that this evidence was in part exculpatory and that her due process rights were violated by the failure to provide the updated criminal history. The State responded that the motion should be denied because this was not newly discovered evidence and that the State had complied with the discovery requests.

---

5. The record contains a five-page document compiled by appellant detailing the full extent of the confidential informant's criminal history. The updated criminal history showed the dismissal of a year-old felony forgery case against the confidential informant in which, according to the State's brief, she confessed, this occurring less than a month after she provided testimony in appellant's trial; multiple counts of worthless check accusations and convictions in Greenbrier and Summers Counties in addition to the 24 counts disclosed to appellant prior to trial; revocation of her probation on obtaining welfare by false statements in April of 2007 and the subsequent jail sentence of 30 days; a prior attempt to revoke the confidential informant's probation on the same conviction that resulted in her placement in substance abuse treatment; and two convictions for obtaining goods by false pretense with a five-day jail sentence (suspended for placement on six-month unsupervised probation).

The circuit court by order entered October 10, 2007, denied the motion for a new trial. On October 12, 2007, the appellant was sentenced to prison for one to five years on Count 1 of the indictment and one to three years on Count 2, said sentences to be served concurrently. After the trial court extended the appeal filing period, the appellant filed her Petition for Appeal on May 9, 2008. On September 4, 2008, the appellant's petition for appeal was granted.

Upon review of the record tendered on appeal, the parties' arguments through their appellate briefs and the relevant law, we reverse the ruling of the circuit court denying the motion for a new trial and remand this matter.

## II.

## STANDARD OF REVIEW

This case is before this Court upon a denial of the appellant's motion for a new trial. We have expressed the standard of review of a trial court's order denying a motion for a new trial as follows: "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syllabus Point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

6. "A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same

## III.

## DISCUSSION

■ The appellant contends that the failure of the State to provide an updated criminal history on the confidential informant prior to trial was error and as such, she was entitled to a new trial. The circuit court disagreed, treating the motion as though it related to newly-discovered evidence and applying a five-prong analysis as to when such newly-discovered evidence warrants a new trial.[6]

■ On appeal, the State conceded that the trial court used an incorrect standard of review in denying the appellant's motion for a new trial and further conceded that when the material facts of this case are analyzed under the correct standard that the appellant was denied due process of law and is entitled to a new trial. We are not bound to act upon the State's confession of error. "This Court is not obligated to accept the State's confession of error in a criminal case. We will do so when, after a proper analysis, we believe error occurred." Syl. Pt. 8, *State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991).

■ When deciding the appellant's motion for new trial, the lower court was faced with the choice of treating the motion as if it dealt with newly-discovered evidence, or whether the motion called for remedying a violation of the appellant's rights to discovery under Rule 16, including the criminal history of all witnesses. The circuit court improperly treated the issue as newly-discovered evidence. Had the circuit court viewed the motion for new trial as a remedy for Rule 16 violations, the result would have been different.

kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 5, [*State v.*] *Kennedy*, [205 W.Va. 224, 517 S.E.2d 457 (1999)] *infra*, citing Syllabus, *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979), quoting, Syl. pt. 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894). Syl. Pt. 1, *State v. King*, 173 W.Va. 164, 313 S.E.2d 440 (1984)." Syl. Pt. 1, *State v. O'Donnell*, 189 W.Va. 628, 433 S.E.2d 566 (1993).

■ This Court has addressed the appellate standard and analysis for violations of Rule 16 of the *West Virginia Rules of Criminal Procedure* in the case of *State ex rel Rusen v. Hill, supra.* "The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syllabus Point 2, *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994). Applying this two-pronged analysis required by *Rusen* instead of the five-point review applicable to newly discovered evidence utilized by the circuit court, we find that the lack of knowledge about the extent of the confidential informant's criminal record was in fact a surprise and that it hampered the presentation of appellant's case.

Some of the strongest evidence against the appellant in this matter came in the form of testimony from the confidential informant in this case. The appellant's conviction was contingent upon the jury's belief in the credibility of the confidential informant The appellant's counsel attempted to impeach the confidential informant's credibility at trial by use of the informant's previous convictions for crimes involving deceit or fraud. Had the appellant's counsel known at the time of trial that the confidential informant did not cease her criminal activities in 2004 and that there had been a year-pending felony charge counsel certainly would have brought these facts out during cross-examination of the confidential informant. Further knowledge of the confidential informant's criminal history would have certainly been a part of the appellant's cross-examination of the Sheriff as well. For these reasons, we cannot agree with the assessment of the lower court that the failure to provide the appellant with an updated copy of the confidential informant's criminal history did not adversely affect the appellant's defense. As such, the circuit court's denial of the appellant's motion for a new trial was an abuse of its discretion.

The appellant has also claimed, and the State conceded, that the denial of the motion for a new trial based upon the State's failure to provide the required updated criminal history is a violation of due process, citing *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007).[7] Because we have resolved the appeal on the basis of Rule 16 violations, it is not necessary to address whether this error rose to the level of a constitutional due process violation.

## IV.

## CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Summers County is reversed, and this case remanded for a new trial.

**Reversed and Remanded.**

---

7. The standard enunciated by this Court in Syllabus Point 2 of *Youngblood* is as follows:

"There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial."