# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**October 11, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 15-0932** (Preston County 15-F-3)

**Robert Watring,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Robert Watring, by counsel Jeremy B. Cooper, appeals the Circuit Court of Preston County's September 18, 2015, order denying his motion to vacate sentence and award a new trial. Petitioner was convicted by a jury of two counts of wanton endangerment and one count of malicious assault for which he was sentenced to prison for a cumulative term of twelve to twenty-two years. Respondent, the State of West Virginia, by counsel David A. Stackpole, filed a response and a supplemental appendix. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying his motion for a new trial based on newly discovered evidence and violations of *Brady v. Maryland*, 373 U.S. 83 (1963) and the rules of discovery under the West Virginia Rules of Criminal Procedure.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2015, petitioner was indicted on two counts of wanton endangerment involving a firearm and one count of malicious assault reportedly committed against his former girlfriend (hereinafter "the victim").[1] Shortly after the indictment was returned, respondent provided petitioner with two discovery packets containing material related to those charges. It is undisputed that those discovery packets did not include photographs of the victim taken by a law enforcement officer directly after the incident.

In June of 2015, petitioner's jury trial commenced. At trial, respondent's witnesses testified that petitioner arrived at the victim's home unannounced and intoxicated in the early morning hours of August 29, 2014. The victim and her two young children were inside the home

---

[1]Petitioner was also indicted on one count of child abuse creating risk of injury and one count of driving on a license suspended or revoked for driving under the influence. However, those two counts were later dismissed and bear no import to the issues raised in this appeal.

1

at that time. According to the testimony at trial, petitioner entered the home, argued with the victim, pointed a firearm at her, choked her, and told her "he was going to put [her] to sleep one way or the other." According to respondent's evidence, one of the victim's neighbors became aware of the altercation and was let into the victim's home by the victim's son. The neighbor stated that he witnessed petitioner "smacking" the victim in the face. The evidence showed that petitioner then pointed his firearm at the neighbor before exiting the house and fleeing in his vehicle. Following a call to authorities, Deputy W.T. McNair and other officers from the Preston County Sheriff's Department arrived at the victim's home.

In her testimony, the victim stated that her injuries included visible red marks on her neck, which was corroborated by the responding officer and the neighbor who both saw the victim directly after the incident. On cross-examination, petitioner's counsel asked the victim whether Deputy McNair had taken photographs of her injuries (hereinafter "the photographs"). The victim answered, "Yes. . . . [o]f my neck and my glasses."[2] Thereafter, the circuit court held a bench conference outside of the jury's presence. The transcript of that bench conference provides as follows (parentheticals in original):

> Ms. Niehaus [petitioner's trial counsel]: We have had a discovery conference. I have requested discovery[,] and this is the first time I've learned of pictures. We have never seen them.
>
> Mr. Shay [prosecutor]: I don't have the pictures, Your Honor. It was in the police report.
>
> Ms. Niehaus: Does Deputy McNair have them?
>
> Deputy McNair: I have two. I put a note on my thing[,] and we give the stuff to my secretary[,] and she sends everything over and gives us our file back. Evidently, it didn't get transferred over.
>
> The Court: Where are they? You didn't know about this?
>
> Mr. Shay: No.
>
> Ms. Niehaus: Are you planning on introducing them?
>
> Mr. Shay: No.
>
> Ms. Niehaus: I would say they are not introducible.
>
> The Court: He said he is not introducing them.
>
> Mr. Shay: After the lunch break, Mr. Morgan [the victim's neighbor] was not back. Can I see if he is out there? He is here.

---

[2]It appears that the victim's glasses were broken during the incident.

At the conclusion of that bench conference, no more was said of the photographs at that time. The trial continued. In his closing argument, petitioner stated that "[h]e testified, the officer, that he observed red marks on her neck and on her face and that her glasses were bent or crooked. We don't have pictures." The jury found petitioner guilty of two counts of wanton endangerment involving a firearm and one count of malicious assault. Following the jury's verdict, petitioner filed a motion for a new trial in which he argued, inter alia, that the photographs were not properly provided to him and could have influenced plea negotiations or the jury's verdict.

In July of 2015, the circuit court held a sentencing hearing at which time it heard argument on petitioner's motion for a new trial. At that hearing, petitioner noted that he still did not know what the photographs depicted.[3] Petitioner argued that knowledge of the photographs was imputed to the prosecutor, who failed to provide them in discovery. Petitioner maintained that the photographs might have influenced plea negotiations or the jury's verdict. The circuit court denied petitioner's motion. In so doing, the circuit court found that

> there was no request made by defense to see [the photographs]. There was no request for recess to allow that to occur. The Court was asked by defense to exclude the photographs[,] and I did that. The alleged victim testified as to the marks allegedly left by the defendant. The Court believes it's speculative [the photographs] would have affected plea bargain negotiations. There's no [c]onstitutional right to a plea bargain.

The circuit court proceeded to sentence petitioner to five years in prison for each count of wanton endangerment involving a firearm and ten years in prison for the single count of malicious assault. Those prison terms were ordered to run consecutive to one another.

In September of 2015, petitioner filed a motion to vacate his sentence and a supplemental motion for a new trial. Petitioner argued that the photographs were exculpatory evidence that were not properly disclosed prior to trial and that they constituted newly discovered evidence requiring a new trial.

Soon thereafter, the circuit court held a hearing on petitioner's motions to vacate and receive a new trial. At that hearing, petitioner's counsel argued that the photographs were "potentially exculpatory" and that it did not "have to be 100 percent clear that the evidence is of an absolutely exculpatory nature." The circuit court asked petitioner whether the photographs were consistent with the testimony of the victim's injuries at trial. Petitioner's counsel replied, "[t]o that extent, it is consistent, Your Honor. Her glasses appear crooked in this photograph . . . and there are indeed red marks on her neck [in the second photograph]." Respondent explained that when the prosecutor's office was provided with the photographs after the sentencing hearing, it immediately provided them to defense counsel. The circuit court concluded that the photographs were not impeachment material, exculpatory evidence, or otherwise material given

---

[3]Although unclear from the record on appeal, petitioner claims that he was not provided with the photographs until after the sentencing hearing.

the other evidence. Further, the circuit court noted that respondent did not seek to introduce them and that petitioner's counsel did not ask to examine the photographs at trial. As such, petitioner was not entitled to a new trial because the photographs were not exculpatory. This appeal followed.

On appeal, petitioner argues that the circuit court erred in denying his motion for a new trial. We have previously set forth the following standard of review:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). Further, "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998).

Petitioner first argues that the circuit court erred in denying his motion for a new trial based on respondent's violation of the principles of due process set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. Petitioner asserts that respondent had a duty under *Brady* to disclose the photographs prior to trial and that failure to do so constituted a due process violation. Petitioner further notes that the photographs were taken by a law enforcement officer and, therefore, knowledge of the photographs was imputed to the prosecutor.[4]

With regard to *Brady* violations, we have held as follows:

> There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

---

[4]*See* Syl. Pt. 1, *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007):

> A police investigator's knowledge of evidence in a criminal case is imputed to the prosecutor. Therefore, a prosecutor's disclosure duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982) includes disclosure of evidence that is known only to a police investigator and not to the prosecutor.

Syl. Pt. 2, *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007). All three of the factors listed in *Youngblood* must be present for petitioner's *Brady* challenge to succeed.

Following a thorough review of the record on appeal, the parties' argument, and pertinent legal authority, we find that petitioner fails to satisfy the first factor for a *Brady* violation. There is simply no indication in the record that the photographs, which undisputedly depict injuries to the victim's body and property, are exculpatory or impeachment material. To the contrary, the photographs appear to be wholly consistent with the testimony of respondent's witnesses at trial regarding the victim's injuries, which were said to be redness around the throat area and broken glasses. At the hearing on his motion for a new trial, petitioner's counsel admitted that the photographs and the victim's trial testimony were consistent to the extent they both established that the victim had redness around her throat area and broken glasses immediately following the incident with petitioner. Petitioner's counsel failed to indicate, at that hearing or otherwise, how the photographs exculpate petitioner or how they demonstrate an inconsistency with respondent's evidence at trial such that they constitute impeachment material. Therefore, we find that petitioner failed to satisfy the first factor to establish a *Brady* violation. For that reason, we find no merit to petitioner's first assignment of error.

Next, petitioner argues that the circuit court erred in denying his motion for a new trial based on respondent's failure to provide him with the photographs prior to trial in violation of the rules of discovery under the West Virginia Rules of Criminal Procedure.[5] This Court has explained that

> "[w]hen a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case." Syllabus Point 2, *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980).

Syl. Pt. 2, *State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987). This Court has further explained that

> "[t]he traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syllabus Point 2, *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994).

---

[5]When referring to the photographs at trial, the prosecutor stated "[i]t was in the police report." While this somewhat-ambiguous statement seems to indicate that the photographs were attached to the police report, which was provided to petitioner through discovery, it is undisputed on appeal that petitioner did not receive copies of the photographs prior to trial.

Syl. Pt. 1, *State v. Adkins*, 223 W.Va. 838, 679 S.E.2d 670 (2009).

In the present case, it does not appear that petitioner's counsel filed a pre-trial discovery motion pursuant to Rule 16. At the arraignment hearing, respondent indicated on the record that it had provided discovery to petitioner, and two filings on the circuit court's docketing sheet indicate that respondent provided discovery packets to petitioner in March of 2015. However, the record does support the assertion that petitioner's counsel filed a motion requesting pre-trial discovery, as required by our holding in *Miller*.

That said, assuming *Miller* applied to this case, petitioner has failed to establish prejudice from respondent's non-disclosure of the photographs. As noted above, prejudice requires a showing of surprise and a hampering of the preparation and presentation of the defendant's case. While it appears from the record on appeal that petitioner's counsel was, indeed, surprised to discover the photographs during trial, we find that petitioner's defense was not hampered by the non-disclosure of the photographs prior to trial. The photographs were in no way inconsistent with the victim's report of her injuries as contained in the police report (which was provided to petitioner in discovery prior to trial) and as presented by respondent's witnesses at trial. Petitioner was aware prior to trial that the victim claimed to have suffered injuries consistent with what the photographs depict. Therefore, petitioner would have known to prepare and present his case in light of those alleged injuries. Because petitioner cannot prove that the non-disclosure was prejudicial to him, we would find no merit to his second assignment of error.

Last, petitioner claims that the photographs constituted newly discovered evidence that required a new trial. We have long provided rules for courts to determine whether a new trial should be granted on the basis of newly discovered evidence:

"A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from the facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative, and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 1, *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979).

Syl. Pt. 1, *State v. William M.*, 225 W.Va. 256, 692 S.E.2d 299 (2010).

Here, petitioner fails to prove that the photographs satisfy the above-listed elements for granting a new trial based on newly discovered evidence. While petitioner did not discover the photographs prior to trial and arguably could not have discovered them through the course of due diligence, which would arguably satisfy the first and second elements, the photographs clearly

fall outside of the remaining elements necessary to receive a new trial. As to the third and fourth elements, the photographs are the definition of cumulative evidence, and there is no indication that the admission of the photographs would have produced a different result at trial. The photographs merely showed what the testimony at petitioner's trial had previously proved—that the victim had redness around her throat area and that her glasses were broken. Therefore, because the photographs fail to satisfy the requirements for a new trial based on newly discovered evidence, we find no error in the circuit court's denial of the motion for a new trial on that ground.

For the foregoing reasons, the circuit court's September 18, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: October 11, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

7